# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

IN RE: : 

LR BUILDERS, INC. : Case No. 02-07591 (ESL)
  : **Chapter 7**

    Debtor. :

_____ :

WIGBERTO LUGO MENDER :
CHAPTER 7 TRUSTEE : Adv. Proc. No. 04-0045

    Plaintiff :

       :

vs. :

DANTE AMADIS RODRIGUEZ SOSA :
ISABEL RIVERA PEREZ, AND THEIR :
CONJUGAL PARTNERSHIP :

    Defendant :

_____ :

## OPINION AND ORDER

This case came before the court on February 27 and 28, 2006 for a trial to determine whether Mr. Dante Amadis Rodriguez Sosa, his wife Isabel Rivera Perez and their conjugal partnership ("Defendants"), as owners of a project called "Proyecto Playa Isabel Trailer Camp", owe the contractor, LR Builders, Inc. represented by Mr. Wigberto Lugo Mender, Chapter 7 Trustee ("Plaintiff"), the sum of $110,026.35, for work performed by LR Builders pursuant to a construction contract executed on June 18, 1996[1]. After consideration of the evidence presented

---

[1]The adversary proceeding cover sheet indicated that the bankruptcy case in which this adversary arises is Luis Rosario Ralat and Maria M. Ortiz d/b/a LR Builders, Case No. 02-04089. However, the complaint correctly identifies the debtor and contracting party as LR Builders, Inc. which filed a Chapter 7 petition on June 17th, 2002 and for which Mr. Wigberto Lugo Mender was appointed trustee. The complaint and subsequent documents have been filed identifying the bankruptcy case no. corresponding to the bankruptcy case of Luis Rosario Ralat and Maria M. Ortiz;

and the post-trial memoranda submitted by the parties, the court finds that Defendants are liable to the Plaintiff in the amount of $110,026.35.

## Nature of the Controversy and the Parties' Arguments

On April 12, 2004 Plaintiff filed the instant complaint against Defendants and requested the entry of judgment directing Defendants to pay the amount of $110,026.50, plus attorney's fees, costs and expenses.  LR Builders, Inc. is a corporation duly organized under the laws of the Commonwealth of Puerto Rico.  On July 17, 2002 LR Builders, Inc. filed a petition under Chapter 7 of the Bankruptcy Code, Mr. Wigberto Lugo Mender, the Plaintiff, was appointed Chapter 7 Trustee.

On June 18, 1996 LR Builders and Defendants executed a construction contract (the "Contract"), whereby LR Builders agreed to provide general contractor services for the construction of the project known as "Proyecto Playa Isabel Trailer Camp and Restaurant" owned by Defendants.  The Contract was in the amount of $314,000.00 to be financed by Banco Popular de Puerto Rico.  The construction Contract established that Defendants would retain 10% of each certification for payment, to be deposited in a savings account at the Salinas Branch of Banco Popular de Puerto Rico, and paid out to LR Builders once the construction works were fully completed.  The project was to be completed within 180 days from the execution of the Contract. There were seven certifications for payment submitted by LR Builders.  Defendants paid 90% of the first six certifications for payment, in the total amount of $202,818.00.  The seventh certification was not paid at all.

---

02-04089, although the caption includes LR Builders, Inc., debtor.  This cause of action belongs to LR Builders, Inc., Case No. 02-07591, the Schedules filed in the case so reflect and Mr. Lugo Mender filed the action on behalf of the estate of LR Builders, Inc. not that of Mr. Luis Rosario Ralat.  Therefore, the bankruptcy case identified in the caption herein is LR Builders, Inc. Case No. 02-07591.

Plaintiff argues that Defendants owe the following amounts:

$58,402.50    for the certification #7 which was never paid,

$22,535.35    for the 10% retainage of the first six certifications

$29,088.50    for additional work performed by LR Builders at the request of Plaintiff

$110,026.35   Total amount owed.

In turn, Defendants argue that LR Builders abandoned the construction and never finished it, consequently, Defendants incurred in considerable costs to finish the project themselves. Defendants maintain that they never authorized any change of orders and that they rejected the seventh certification for payment submitted by LR Builders. Also, they argue that LR Builders, Inc. failed to disclose in the Statement of Financial Affairs filed in its Chapter 7 case, the suit that was pending in the Ponce Superior Court against Defendants herein, constituting bad faith and barring LR Builders from recovering judgment in their favor.

**Factual Background**

In support of his position Plaintiff presented the testimony of Mr. Luis Rosario Ralat, President of LR Builders, Mr. Florencio Vazquez Vargas, the inspector of the "Proyecto Playa Isabel Trailer Camp" and Mr. Wigberto Lugo Mender, Chapter 7 Trustee. Defendants presented the testimony of Mr. Dante Amadis Rodriguez Sosa.

Mr. Rosario Ralat testified that he usually submitted certifications for payment every month and that as per the Contract executed between LR Builders and Defendants, the project owner retained 10% of the monies owed pursuant to each certification for payment to be paid upon the conclusion of the project. The certifications would be submitted to the owner, Mr. Dante Rodriguez Sosa, after approval of the inspector, Engineer Florencio Vazquez. Mr. Rosario stated Defendants did not pay the seventh certification dated March 31, 1997 which shows the

-3-

conclusion of 90% of the work. Subsequently, instead of preparing an eighth certification, LR Builders submitted a revised seventh certification dated August 2, 1997, adding additional work performed after the March certification and showing the final numbers in the project. Plaintiff's Exhibit XVII. LR Builders has not collected any portion of the retainage nor of the seventh certification for payment.

After the March 31, 1997 certification was submitted, the owner, Mr. Rodriguez, informed Mr. Rosario that at the moment there was no money to pay him. This prompted Mr. Rosario to send collection letters. The letter dated August 15, 1997, signed by him and Mr. Vazquez, the owner's inspector, detailed the work performed, including all change orders. Plaintiff's Exhibit X. Additional work was added and other work not done was deducted, due to changes on site, not in the blueprints, for a total balance in change orders of $29,088.50. According to Mr. Rosario, all changes were made at the request of Defendants, after the inspector's approval, and he did not require them in writing because he trusted Defendants. He thought that being a Superior Court judge, Mr. Rodriguez would pay in accordance with their verbal agreements. Mr. Rodriguez was in the project on a daily basis, continuously asking for change orders. Mr. Rosario further stated that the project could not be finished within the time specified in the Contract due to changes requested by Defendants, for example the removal of sand and landfill brought by another contractor.

Mr. Rosario testified that LR Builders finished the project and that no document or written communication was ever submitted by Defendants indicating default by LR Builders as required by the Contract. He further stated that in the site, adjacent to the area where LR Builders was working, the owner was building a restaurant and recreational areas (children's

-4-

playground, pool, gazebo), at the same time, and paying directly; not through a contractor ("por administracion").

Mr. Florencio Vazquez Vargas, the inspector of the project, testified that he was hired by Defendants to insure that the work was done in accordance with the blueprints approved by ARPE, as it was done by the contractor LR Builders.  He confirmed that Defendants also performed construction work in the adjacent site: land movement, recreational areas and a small structure for a restaurant.  Defendants failed to pay Mr. Vazquez as stipulated in the Contract.  He continued to visit periodically because he was not formally removed as inspector.  Mr. Vazquez confirmed Mr. Rosario's testimony that there was construction work at the site being done by both Defendants and LR Builders.

Mr. Vazquez stated that he knows of delays caused by Mr. Rodriguez performing excavation work not contemplated in the contract with LR Builders.  He does not know of anyone else, other than Mr. Rodriguez, causing delays.  He reviewed the seven certifications for payment submitted by LR Builders, and after reviewing that the amounts were correct and the work was performed, recommended payment of all.  Furthermore, he requested the use permit when the project was substantially finished as he was the person who certified the work done.  He did not know of any letters or written communication from Defendants to LR Builders regarding cessation of the project or declaring the project in default.

Mr. Vazquez recalled that there were change orders requested by Defendants and performed by LR Builders, although not in writing, only verbal.  He expressed that these changes benefitted the project as they increased its value.

Mr. Wigberto Lugo Mender stated that as a chapter 7 trustee he has the duty to liquidate

- 5 -

assets, and one of the assets of this estate was the account receivable of Defendants. A preliminary review of the proof of claims shows that no claim related to this project has been filed. LR Builders had filed a case against Defendants before the Ponce Superior Court which was stayed upon the filing of the petition.

Defendants presented the testimony of Mr. Dante Amadis Rodriguez Sosa who stated that the Contract entered into with LR Builders for the construction of the project provided it would be completed within 180 days from its execution, from June 18, 1996. He stated that the first six certifications for payment were submitted within the agreed 180-day period, thus, they were paid. However, it was established, through the evidence presented, that the sixth certification for payment was submitted on February 7, 1997, that is, after the conclusion of the 180-day period. Plaintiff's Exhibit VIII. Mr. Rodriguez stated that he would not pay the seventh certification for payment or the retainage because the project was not finished within the time frame provided pursuant to the Contract, considering the applicable penalties. Also, that by the sixth certification several works were not completed, thus, there was a breach of contract. Mr. Rodriguez expressed that LR Builders had other projects at the same time and paid more attention to the other projects, abandoning "Proyecto Playa Isabel Trailer Camp and Restaurant".

Mr. Rodriguez stated that he hired Mr. Florencio Vazquez to represent him in the project, at $4,500, for the six months of the Contract. Last time he saw Mr. Vazquez was when the last check was given to him, in December 1996. At that time he stated that he dismissed him. However, no written document was presented to this effect. Furthermore, Defendant's Exhibit 1, the Application for Use Permit shows a certification signed by Mr. Vazquez as late as June 23, 1997 and Plaintiff's Exhibit XVII, the Seventh Application and Certificate for Payment as

- 6 -

amended, dated August 2, 1996, is certified by Mr. Vazquez.

Mr. Rodriguez also stated that LR Builders abandoned the project before it was finished and, thus, he had to assume the conclusion of the project. He refused to sign the seventh certification for payment and refused to accept change orders which were not in accordance with the terms of the Contract. He did not sign the document with the change orders because the project was not completed. He further stated that there was never a written request for a change order as required by the Contract.

Mr. Rodriguez stated that he had to correct sanitary deficiencies (around $1,000), had to move all connections to the side as they were in the middle of the lots, and LR Builders did not comply with the street construction as agreed. He said that he could either make a claim to the bond company or use the money owed to LR Builders to finish the project, he did the latter. Photocopies of checks signed by Mr. Rodriguez, to the order of hardware stores, other suppliers and many of cash, issued from February 1997 through 1999, were presented into evidence reflecting expenses he paid to allegedly complete the project. Mr. Rodriguez expressed that he spent $64,000 in materials, in addition to manpower. From the evidence presented the court cannot determine that the expenses paid by Mr. Rodriguez correspond to work not performed by the contractor as per the Contract and blueprints. As stated, some of the checks presented were made to hardware stores like; Ferreteria Playa, Ferreteria Sola, Builders Square, Ferreterias Masso and to other suppliers like Glidden, Plom Electric and Salinas Ready Mix. However, no evidence was presented to establish that payments made by Mr. Rodriguez were due to non performance of LR Builders of the Contract as per blueprints, or that these expenses were related to the "Proyecto Playa Isabel Trailer Camp" in any way. The expenses could have been related to

-7-

the construction Defendants were doing themselves ("por administracion"), adjacent to the site where LR Builders was working.

Mr. Rodriguez admitted that he visited the project everyday, night and day, and looked around the site. He never wrote to the contractor about the deficiencies. Plaintiff submitted as Exhibit XVIII a report on the deficiencies of the project prepared by Mr. Jorge Torres, Civil Engineer and Environmental Designer Architect, which provides that after talking to Mr. Dante Rodriguez Sosa, who discussed the changes performed to the structure in the original blueprints, they decided it was time to audit and inspect the same. The audit or inspection started on March 6, 1997 and finished on March 7, 1997. The deficiencies listed do not appear to relate to the work done by LR Builders as they do not relate to the infrastructure. Also, the letter shows that Mr. Rodriguez was well aware of the changes to the structure, the work for which is now claimed by LR Builders. Mr. Rodriguez expressed that he had never seen that document and that he does not know Jorge Torres. However, Plaintiffs pointed out that check no. 246, dated June 21, 1997 in the amount of $300.00 and signed by Dante A. Rodriguez, copy of which was submitted by Defendants as part of Exhibit 6, is made to the order of Jorge Torres.

Although Defendants argued that LR Builders failed in its obligation to request the permit for use, the evidence presented shows that Mr. Rodriguez, as the owner, was the one with the obligation to request the permit, as the whole project included both LR Builders' part and his own part. Furthermore, an application for the use permit signed by both Mr. Rosario and Mr. Vazquez was submitted into evidence by both parties. (Plaintiff's Exhibit XI and Defendant's Exhibit 1). Mr. Rodriguez stated that he complied with the Contract but did not send a letter declaring project in default, did not write a letter dismissing Mr. Florencio Vazquez and did not

- 8 -

designate a new inspector in writing.  Furthermore, Mr. Rodriguez was obligated to pay within five days from the certifications, but not all payments were made within the agreed time frame.

## Discussion

The Plaintiff clearly established that the Defendants failed to pay the retainage and the seventh certification.  In fact, Defendants do not dispute that these amounts were not paid, their argument is that LR Builders did not finish the project and Defendants incurred in expenses to finish it.  The evidence presented failed to prove that LR Builders did not finish the project, in fact, Defendant's own inspector testified and certified in writing that LR Builders finished the project.  The evidence also failed to establish that Defendants incurred in expenses to cover the work LR Builders was suppose to do under the Contract.  Defendants presented copies of checks make out to different suppliers during 1996 and 1997 but no connection between the checks and LR Builders' project was established.  Furthermore, Defendants failed to establish that the project was delayed due to LR Builders.  Both Mr. Rosario and Mr. Vazquez testified that the delays in the construction were due to the change orders requested by Defendants.  Their testimony was substantiated with Plaintiff's Exhibit X, the letter dated August 15, 1997, addressed to Mr. Rodriguez and signed by Mr. Rosario and Mr. Vazquez detailing the additional work performed and the additional time involved.

Defendants further argue that they never approved the change orders in accordance with the provisions of the Contract, thus they are not owed.

As stated by both parties in their post-trial memoranda, "obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations."  Art. 1044, Civil Code of Puerto Rico, 31 LPRA § 2994.  Therefore,

- 9 -

courts may not relieve a party of obligation to do whatever he agreed to do by contract, provided said contract is legal, valid and without defect. Cerveceria Corona v. Commonwealth Inc. Co., 115 PRR 345 (1984). "Contracts shall be binding, whatever may the form in which they may have been executed, provided the essential conditions required for their validity exist." Art. 1230 Civil Code of Puerto Rico, 31 LPRA § 3451. A contract is the law between the contracting parties. Quiñones Lopez v. Manzano Posas, 141 D.P.R. 139, 154 (1996); Autoridad de Acueductos y Alcantarillados v. Librotex, 141 D.P.R. 375, 370 (1996); Torres v. ELA, 130 D.P.R. 640, 651 (1992). "If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." Art. 1233 Civil Code of Puerto Rico, 31 LPRA § 3471.

In consideration of the aforestated, we now turn to the Contract between the parties. The Contract provides in its Article 7 and 8 as follows:

ARTICLE 7: ADMINISTRATION AND REPRESENTATIVES

> A) This contract shall be administered by the Owner[;] nevertheless the Owner and the Contractor shall each designate one person to represent them (hereinafter the Owner's Representative and the Contractor's Representative) and each of them shall agree to and recognize them as the sole and exclusive representatives of each party, **with full powers and authority to act in favor of each party** until his authorization is revoked in writing and another representative is designated. Neither of the parties shall agree to or recognize anyone who has not been authorized to act as such.

> Owner's Representative: Florencio Vazquez-Vargas, Engr.
> HC-02 Mail Box 8978
> Aibonito, PR 00705
> Phone 735-0971

> Contractor's Representative: Mr. Luis Rosario-Ralat

> b) The Owner and the Contractor acknowledge and agree that the Project to be

- 10 -

built shall be for the use and benefit of the former and that consequently the designation of the Owner's Representative shall [sic] be changed by it at any time. The Contractor shall receive orders, instructions, approvals, consent and any such other instructions or directives as this contract provides for to be given by the Owner and the same shall have no effect, unless they are signed by the Owner or its Representative.  Any notice, payment request, or other communications from the Contractor to the Owner shall be made either to the Owner or to its Representative.  The Owner's Representative shall have the right to compel compliance with all agreements for the benefit of the Owner[.]

c) The authority of those identified as the Owner's Representative shall be limited to acts and approvals within the scope of the work to be performed[,] and for those matters outside such scope, the Owner's written approval shall be required.

ARTICLE 8: CHANGE ORDERS

The compensation to be paid to the Contractor shall not be subject to adjustments, by increases or reductions in the Contractor's costs or its expenses.

The cost of any change order shall be specified in writing, signed by both parties in such a way that it reflects the increase or reduction in the costs and expenses which such change order shall involve for the project.  Such change orders shall be effected in accordance with the following procedures:

(a)  they shall be in writing and signed by the parties.

(b) they shall be subject to such terms and conditions as are applicable or specified hereinbelow in this contract.

Plaintiff's Exhibit 1 at page 6-7 (emphasis ours).

It is evident from reading these provisions of the Contract, that Mr. Vazquez, as the Owner's (Defendants') representative, had the authority to approve the work to be performed, including the change orders discussed on site.  Mr. Vazquez, approved the change orders as described in Plaintiff's Exhibit X, a letter dated August 15, 1996 addressed to Mr. Rodriguez from LR Builders, signed by both Mr. Rosario and Mr. Vazquez, detailing the work performed and the amounts owed by Defendants.  In sum, LR Builders  performed additional work in the

- 11 -

amount of $53,283.50 and deducted work not performed as per original contract in the amount of $24,195.00, for a balance owed of $29,088.50. Among the additional work performed was: a longer fence, additional iron gates, additional wall of concrete blocks, sidewalks, staircase, ramp for the disabled, the shingle roof according to the plan was changed to a zinc roof (purchased by the owner)for both buildings A (administration building and store) and B (food stand), the floor tile was changed to Italian tile (purchased by the owner), installed in design, etc.

It defies logic to find that Mr. Rodriguez did not order the changes performed by the contractor and that the contractor acted on his own initiative. By comparing the work to be done pursuant to the original contract (Plaintiff's Exhibit II), to the additional work performed, as detailed in the August 15, 1997 letter signed by both Mr. Rosario and Mr. Vazquez (Plaintiff's Exhibit X), it is clear that the changes made were not part of the original agreement. Furthermore, Mr. Rodriguez cannot dispute that he knew this additional construction was underway because, according to his testimony, he visited the site everyday.

The Defendants have waived and/or failed to establish their allegation that LR Builders' failure to disclose in the Statement of Financial Affairs filed in its Chapter 7 case, the suit pending in the Ponce Superior Court, constitutes bad faith and bars LR Builders from recovering judgment in their favor. No evidence was presented to support a finding of bad faith on behalf of LR Builders. Also, Defendants neglected to brief and support with caselaw their argument that the failure to include the suit in the Statement of Financial Affairs precludes Plaintiff from recovering from Defendants.

- 12 -

## Conclusion

For the reasons stated above, this court finds that Defendants owe Plaintiff the amount of $110,026.35, for work performed by LR Builders pursuant to a construction contract with Defendants, executed on June 18, 1996.  Judgment shall be entered accordingly.

SO ORDERED.

In San Juan, Puerto Rico, this 6th  day of February 2007.

ENRIQUE S. LAMOUTTE
U. S. Bankruptcy Judge